UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANGELIA RUFFIN, et al.,

        Plaintiffs,

v.

MOTORCITY, an assumed named of
DETROIT ENTERTAINMENT, LLC,

        Defendant.

Case No. 12-cv-11683

HONORABLE STEPHEN J. MURPHY, III

_____/

**ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT** (document no. 32), **DENYING PLAINTIFFS'
MOTION TO AMEND COMPLAINT** (document no. 34), **AND DISMISSING CASE**

Plaintiffs are a group of current and former security guards at Detroit MotorCity Casino ("MotorCity"). They contend that, from 1999 to 2012,[1] MotorCity required its security guards to attend a 15-minute "roll call" meeting prior to the start of their shift and to work during their 30-minute lunch break. This requirement, allegedly resulted in their work weeks exceeding 40 hours, and MotorCity refused to compensate them with overtime. On August 8, 2012, Plaintiffs filed a motion for leave to file a second amended complaint, which the Court granted in part and denied in part. *See* Mot. to Amend, ECF No. 12; Order Granting in Part & Denying in Part Mot. to Am. Compl., ECF No. 18. On October 16, 2012, MotorCity moved to dismiss Count I, violation of the minimum-wage provision of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206, and Count III, violation of the minimum-wage provision of Michigan's Minimum Wage Law, Mich. Comp. Laws § 408.381-98 ("MWL"), and the Court granted the motion. *See* Mot to Dismiss, ECF No. 21, Order Granting Mot. for Summ. J. on Counts I & III of the Second Am. Compl., ECF No. 28. The matter

---

[1] On July 1, 2012, MotorCity eliminated pre-shift roll call. Letter of Understanding, ECF No. 32-8.

presently before the Court is MotorCity's motion for Summary Judgment on Count II, the

only remaining claim,[2] which asserts the violation of FLSA's overtime provision, 29 U.S.C.

§ 207.[3] The Court conducted a hearing on February 27, 2014. For the reasons stated

below, the Court will grant summary judgment to MotorCity and dismiss the complaint.[4]

## BACKGROUND

The Court appreciates that the parties have stipulated to most of the relevant facts.

*See* Stipulation Concerning Uncontested Facts, ECF No. 31. Plaintiffs are current and

former security officers of MotorCity. *Id.* ¶ 2. At all times relevant to the Complaint, the

terms and conditions of their employment were governed by collective bargaining

agreements ("CBAs") negotiated between Plaintiffs' union, the International Union of

Security Police and Fire Professionals of America ("the Union") and MotorCity. *Id.* The

CBAs entitle security officers who work an 8-hour shift to a paid 30-minute meal period and

two paid 15-minute breaks. *Id.* ¶ 3.Until July 1, 2012, MotorCity required Plaintiffs to attend

daily 15-minute, pre-shift roll call sessions for which they were not compensated. *Id.* ¶ 4.

---

[2] Count IV purports to state "Class Action Allegations," but it does not state an independent claim or legal theory. Accordingly, dismissal of Count II necessitates dismissal of Count IV and the entire case.

[3] Also before the Court is Plaintiffs' motion to amend the complaint to add 106 additional plaintiffs. Mot. to Amend the Compl. to Add Additional Parties, ECF No. 34. MotorCity's response is that it has no objection to the amendment except that it is futile for the reasons stated in its motion for summary judgment. Resp. to Mot. to Amend Compl., ECF No. 36. Given the ruling on the summary judgment motion, the Court will deny the motion to amend as moot.

[4] According to the CBA, if a security guard "loses break or lunch time to perform security duties[,] the lost time will be made up in a reasonable time, subject to business needs." CBA 18, ECF No. 32-3.

At all relevant times, Plaintiffs also had a 30 minute meal period each day. *Id.* ¶ 5. During any given week, the amount of time classified as meal time afforded to each Plaintiff exceeded the amount of time each plaintiff spent at roll call. *Id.* ¶ 8. During the meal periods, security officers were required to monitor their radios, which had to stay on for their entire shift. *Id.* ¶ 10. Security officers had to respond to all calls directed to them and to stay on MotorCity's premises during a meal period. *Id.* Meal periods were occasionally interrupted by emergency calls, which may have been reflected in break and dispatch logs kept by the dispatchers. *Id.* The security officers were not permitted to sit in their cars, eat in their cars, or make phone calls from their cars during their break periods. *Id.* The security officers could not receive lunch or break guests, including spouses, children, siblings, or significant others. *Id.* The security officers were not allowed to order food or beverages to be delivered to MotorCity. *Id.* Nonetheless, they were allowed to bring food and beverages to the premises, which they could consume during their break periods, and to store those items in a refrigerator reserved for that purpose. *Id.*

The security officers were required to spend their break times either in the employee cafeteria, which offered free food and beverages, or one of the several break rooms, two of which offered free beverages, unless permission was given to do otherwise. *Id.* With permission, the security officers were also permitted to retrieve items from their cars or go to the gift shop. *Id.* They were otherwise free to eat, drink, socialize with other MotorCity employees, use their cell phones, use the internet and the company-provided computers in the cafeteria, watch the televisions installed in the cafeteria and various break rooms, read, play cards and other games, participate in employee, employer, or union-sponsored

events, such as health fairs, safety fairs, bake sales, and fund-raisers, walk on the outdoor pathway around the perimeter of the complex, and use the designated smoking area. *Id.*

Plaintiffs rely on the deposition testimony of plaintiffs who emphasize the burden of listening to the radios. Latrina Kirby testified that the failure to monitor a radio during meal time could result in disciplinary action. Kirby Dep. 100, ECF No. 33-2. She stated that the radio went off "[A]ll the time" and that  was "hardly ever a period where [it was] quiet." *Id.* at 93. Sharise Webb testified that, during her break, she had to "constantly" monitor her radio in case dispatch or management called and that there was "constant chatter" over the radio. Webb Dep. 51-53, ECF No. 33-3.

Kirby and Webb also testified that, even when they were on breaks, they conducted radio checks when their radios were silent, meaning that they called out across the radio to ensure that they were on the correct frequency. Kirby Dep. 104-05; Webb Dep. 53. Kirby testified that she could not make long personal calls during breaks because she had to be aware of the radio. Kirby Dep. 24. She testified that she did not "block out anything," but instead listened to every word that came over the radio. *Id.* at 89. Both Kirby and Webb worked as dispatchers for the other security guards. Kirby testified that the entire staff working during a shift had to be available to be contacted, including those on break. *Id.* at 26-27. Webb testified that those on break had to monitor their radios so that dispatchers could effectively run the shift. Webb Dep. 53. Kirby testified that the lunch period was "[n]ot really" a break period. Kirby Dep. 94.

MotorCity points to other testimony to argue that Plaintiffs are placing undue emphasis on the burden that monitoring the radios cause. Motor City notes that the radios had to be on at all times during a shift, even when the security guards were working on the

busy casino floor. MotorCity presents the testimony of Plaintiff Philip Tibbs, who testified that his radio had to be on and he had to pay attention to it, even when talking to customers, checking them, and counting money. Tibbs Dep. 33, ECF No. 35-4. Webb also testified that, during breaks, she socialized with other employees, texted, used the Internet, and conducted personal business on her phone. Webb Dep. 46-49. Kirby similarly testified that, during breaks, she talked on her personal phone and socialized. *Id.* at 82-83.

## STANDARD OF REVIEW

Civil Rule 56(c) provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir.1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435-36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435. A fact is "material" for the purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th

Cir. 1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993).

Once the moving party carries the initial burden of demonstrating that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact and, instead, must produce evidence that would be sufficient to require submission of the issue of the jury. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see also Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

## DISCUSSION

I.   <u>Whether MotorCity Is Entitled to Offset the Paid Meal Breaks against Plaintiffs' Unpaid Roll Call Attendance</u>

Plaintiffs allege that they must be compensated in overtime for both the meal breaks and the roll call period. Sec. Amend. Compl. ¶¶ 344-64. Section 7(a) of the FLSA requires employers to pay overtime to employees who work more than 40 hours per week "at a rate not less than one and one-half times the regular rate at which [they are] employed." 29 U.S.C. § 207(a). In the case at bar, it is undisputed that a security officer who worked an

8 hour shift was entitled to a paid 30-minute meal period and two paid 15-minute breaks during that shift. Stipulation Concerning Uncontested Facts ¶ 3. Accordingly, plaintiffs argue that they are entitled to overtime for the 15 minute roll call period at the beginning of their shifts.

MotorCity first argues that it is entitled to off-set the paid meal breaks against the unpaid roll call attendance. In support of this argument, MotorCity relies primarily on *Barefield v. Village of Winnetka*, 81 F.3d 704 (7th Cir. 1996). In that case, which is factually similar to the one at bar, police officers sued for failure to pay for their daily 15-minute pre-shift roll call sessions to which the employer responded that it was not in violation of the FLSA because plaintiffs' regular eight-hour work period included 30 minutes of meal time. *Id.* at 710. The Seventh Circuit determined that the meal periods were not compensable under the FLSA and ruled that the employer "may properly offset the meal break against the compensable roll call time worked by plaintiffs." *Id.*

Plaintiffs respond that this argument is irrelevant and that there is no Sixth Circuit case law on this point. Plaintiffs appear to contend that MotorCity has conceded that they are entitled to overtime for the roll call attendance. But, the argument is relevant because MotorCity's defense regarding the compensable roll call time is that it is indeed offset by the meal break. Although there is no Sixth Circuit case law directly on point, at least one district court in the Circuit has looked upon the rule of *Barefield* favorably. In *Lacy v. Reddy Elec. Co.*, No. 11-cv-52, 2013 WL 3580309, at *15 (S.D. Ohio July 11, 2013), the district court, citing *Barefield*, stated, "If the FLSA's overtime requirements have not yet been triggered, such an offset may well be available." And, that is the case here: as long as the meal periods are not compensable, plaintiffs will have worked 7.5 hours per day or 37.5

hours per week before the 1.25 hours of roll call time, making the offset available.[5]

Accordingly, MotorCity is entitled to apply the time its security officers spent taking paid

meal breaks as a credit against the time they spent in unpaid roll call sessions during the

same work week as long as those meal breaks are not compensable under the meaning

of the FLSA.

II.    Whether the Meal Breaks Are Compensable

"Time spent predominantly for the employer's benefit during a period, although

designated as a lunch period or under any other designation, nevertheless constitutes

working time compensable under the provisions of the Fair Labor Standards Act." *F.W.*

*Stock & Sons, Inc v. Thompson*, 194 F.2d 493, 496-97 (6th Cir. 1952) (quoting *Thompson*

*v. F.W. Stock & Sons, Inc.*, 93 F.Supp. 213, 216 (E.D. Mich. 1950)). In *Hill v. United States*,

751 F.2d 810 (6th Cir. 1984), the Court of Appeals set forth the standard for determining

whether a meal period is compensable under the FLSA, reasoning, "As long as the

employee can pursue his or her mealtime adequately and comfortably, is not engaged in

the performance of any substantial duties, and does not spend time predominantly for the

employer's benefit, the employee is relieved of duty and is not entitled to compensation

under the FLSA." *Id.* at 814. "[I]t is the employee who bears the burden of proving that he

---

[5] MotorCity also points to *Reich v. Lucas Enters., Inc.,* No. 92-3624, 1993 WL 307080 (6th Cir. Aug. 12, 1993), as a case that "cit[es] with approval a case with facts virtually identical to those of the instant case in which lunch periods were deemed to be predominantly for the employees' benefit, and were credited against uncompensated pre- and post-shift periods that employees were required to attend." Mot. for Summ. J.17, ECF No. 32. The present case, however, is distinguishable. The Court in *Reich* determined that "an employer who voluntarily pays for lunch hours not counted as hours worked is not entitled to have the payments credited toward overtime compensation due under the FLSA." *Reich*, 1993 WL 307080, at *1. *Reich* involves how lunch period pay as opposed to lunch period hours should be dealt with in computing overtime pay. *Id.* at *3. This case simply involves calculating whether the roll call hours count as hours worked.

or she performs substantial duties and spends his or her time predominantly for the employer's benefit." *Myracle v. Gen. Elec. Co.*, No. 92-6716, 1994 WL 456769, at *4 (6th Cir. Aug. 23,1994)(per curiam).

MotorCity contends that merely requiring an employee to keep his radio on with the potential for occasional interruption and to remain on the premises or in particular locations do not make breaks compensable. Plaintiffs make two arguments in response: first, that since the chatter on the radios was so constant and that, to avoid disciplinary, action the plaintiffs were required to closely monitored their radios, these acts constitute the performance of a substantial duty; and, second, that the break time must be compensable because "defendant does not offer this Court a single case in which a Court held that a plaintiff who was confined in his work area *and* monitoring constant radio chatter was not working." Resp. 7-8, ECF No. 33. Both contentions are unavailing.

*Myracle,* 1994 WL 456769, is instructive regarding the amount of disruption that constitutes engaging in a substantial duty during a meal time. In that case, mechanics who ran machines in a light bulb manufacturing plant were responsible for the product produced from the machine they operated throughout their shifts, including breaks and a meal period. *Id.* at *2. Most of the mechanics used a "buddy system" when they were away from their machines during these periods in which a nearby mechanic or "buddy" would respond to any machine-generated warning signal, make necessary adjustments, or shut a machine down. *Id.* Because the absent mechanics would at all times be responsible for production on their machines, their meal periods were sometimes interrupted by power outages, machine breakdowns, or pages from supervisors. *Id.* In determining that the meal periods were not compensable, the Court explained, "The question is not simply whether [the

employer] receives benefit during the plaintiffs' meal break, for it clearly does," and rejected the argument that the plaintiffs were engaged in substantial duties during the meal period. *Id.* at *5. The Court further reasoned that to require compensation for the meal periods "penalizes the employer for maintaining production on a twenty-four [hour] basis," and concluded, "So long as the employee receives a sufficient period of time in which to eat his meal undisturbed and unhassled, the dictates of the FLSA are satisfied." *Id.*

In the present case, to require compensation for meal periods in which security guards need only monitor their radios would penalize MotorCity for maintaining a full security force at all times. The parties stipulated that "a meal period may occasionally be interrupted by an emergency call." Stipulation Concerning Uncontested Facts ¶ 10, which signifies a *de minimis* interruption insufficient to constitute a substantial duty. Even accepting plaintiffs' position that the radio chatter was constant, they have not shown that its monitoring rises to the level of a substantial duty since plaintiffs had many other freedoms during their lunch periods, including making personal phone calls, using the internet, and watching television. And, the evidence does not show that any of the activities were regularly disrupted by checking radios. No evidence demonstrates that eating meals was ever disrupted.

MotorCity has presented persuasive cases demonstrating that the meal period at issue is not compensable. In *Haviland v. Catholic Health Initiatives-Iowa Corp.*, 729 F. Supp. 2d 1038 (S.D. Iowa 2010), the district court found that meal times for security officers at hospitals were not compensable when the employees had restrictions including not being permitted to leave the premises, keeping their radios on, and responding to situations that may arise, as in the case at bar. *Id.* at 1059-60. Similar to the present case, security

officers were able to make phone calls, eat, and use computers to conduct personal business during breaks. *Id.* at 1063; 1071. The district court concluded that "the undisputed circumstances of Plaintiffs' break periods could [not] permit a reasonable jury to conclude that Plaintiffs were, by virtue of [defendant's] policies, acting for the predominant benefit of [defendant] during their lunch periods merely because they were required to remain on site, carry a radio, and respond to emergencies if they arose." *Id.* at 1070.

Similarly, in *Agner v. United States*, 8 Cl. Ct. 635 (1986), *aff'd* 795 F.2d 1017 (Fed. Cir. 1986), the United States Claims Court determined that a lunch break for the Special Police Force of the Library of Congress was not compensable when the officers could use their lunch periods as they chose, but had to remain on library premises in uniform and in possession of their firearms, had to keep on their two-way radios, and had to answer any radio calls from supervisors. *Id.* at 636. The Court explained:

> [It] does not view the requirement that radios be kept on during this time as significant. Plaintiffs must respond to calls from supervisors. The radios are merely extensions of the supervisors' voices, if you will, which contribute to efficiency. Keeping them on is no more onerous than a requirement to stay alert to voice commands, and less so than requiring plaintiffs to stay within voice range of supervisors so they can be summoned if necessary. Indeed, it is a fair inference that radios enhance employees' freedom during the lunch break.

*Id.* at 638. The analysis is persuasive, particularly since the plaintiffs at bar are also members of a security force who must be ready to respond to emergencies on the premises.

*Beasley v. Hillcrest Med. Ctr.*, 78 F. App'x 67 (10th Cir. 2003), on which Plaintiffs rely, is distinguishable. In that case, the Tenth Circuit found that fact issues existed as to whether nurses and technicians were primarily engaged in work-related activities during their lunch periods. *Id.* The evidence showed that the plaintiffs were interrupted 75 percent

11

to 95 percent of the time to deal with work issues and had to watch monitors or work on computers during their lunch periods. *Id.* at 71. In contrast, the parties here have stipulated that the interruptions were minimal. In addition, watching monitors or working on computers constitutes significantly more work than listening to radios. The present case is also different than *Lamon v. City of Shawnee*, 972 F.2d 1145 (10th Cir. 1992), in which police officers were allowed to be in the city limits or close proximity to the city, but had to leave a telephone number or monitor a radio, respond to emergency calls, answer to personnel shortages, respond to citizen requests, and confront crimes committed in their presence. *Id.* at 1156.  There is no evidence in this case of having to fill in for personnel shortages or to deal with work tasks unless limited emergency situations arose.

Plaintiffs also rely on *Martin v. Ohio Tpk. Comm'n*, 968 F.2d 606 (6th Cir. 1992), a case involving overtime compensation for on-call time while away from the work site. Although MotorCity is correct that on-call time is subject to a different regulation than a meal period, Plaintiffs are correct to argue that essentially the same standard applies for determining whether both meal periods and on-call time are compensable. *Rutlin v. Prime Succession, Inc.*, 220 F.3d 737, 743-44 (6th Cir. 2000). But, in *Martin,* plaintiffs could not show that the use of the radio was "unusually onerous." *Id.* at 612. And, that reflects the facts here.

Plaintiffs also rely on another on-call case, *Cross v. Arkansas Forestry Comm'n*, 938 F.2d 912 (8th Cir. 1991), that the Sixth Circuit Court of Appeals distinguished in *Rutlin*. In *Cross*, the Eighth Circuit Court of Appeals found that on-call time was compensable when employees had to monitor their radios and respond to emergencies twenty-four hours per day, seven days per week, essentially forcing them to always remain less than thirty-

12

five or fifty miles from their workplace so as to be in the range of the radio signal. *Id.* at 914; 916-17. The Eighth Circuit pointed out that these restrictions severely limited personal activities done outside of work because the employees needed to be mentally and physically capable of fighting a fire at all times, the restrictions prevented them from participating in activities, like musical or sporting events, that would stop them from hearing transmissions, and the employees would be unlikely to participate in activities that cost much money because of the likelihood that they would be called to work. *Id.* at 914. The restrictions imposed on the Plaintiffs here were far more modest.

Nothing in the record supports the notion that the meal periods at bar involved the performance of substantial duties. Accordingly, the meal times are not compensable.

## CONCLUSION

The paid meal periods at issue are not compensable and, therefore, not subject to overtime compensation. Furthermore, Plaintiffs were given meal periods in each work week that were in excess of the time they spent in unpaid roll call sessions. Stipulation Concerning Uncontested Facts ¶ 8. Because the meal time is not compensable and because the workweek excluding the mealtime constituted less than 40 hours per week, even including the roll call sessions, MotorCity is entitled to an offset of that time, and, therefore, summary judgment on the overtime claim. As Count II is the last remaining claim of the complaint, the complaint will be dismissed with prejudice.


## ORDER

**WHEREFORE**, it is hereby **ORDERED** that MotorCity's motion for summary judgment on Count II (document no. 32) is **GRANTED**.

**IT IS FURTHER ORDERED** that the complaint is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiffs' motion to amend the complaint to add

additional parties (document no. 34) is **DENIED AS MOOT**.

**SO ORDERED**.


s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: March 10, 2014

I hereby certify that a copy of the foregoing document was served upon the parties and/or
counsel of record on March 10, 2014, by electronic and/or ordinary mail.

s/Carol Cohron
Case Manager