# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  | 100 EAST FIFTH STREET, ROOM 540 | |
|---|---|---|
| Deborah S. Hunt | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed: January 07, 2015

Mr. Thomas J. Davis
Mr. Thomas G. Kienbaum
Mr. Eric J. Pelton
Kienbaum, Opperwall, Hardy & Pelton
280 N. Old Woodward Avenue, Suite 400
Birmingham, MI 48009

Mr. Christopher Patrick Desmond
535 Griswold Street, Suite 2632
Detroit, MI 48226

> Re: Case No. 14-1444, *Angelia Ruffin, et al v. MotorCity Casino*
> Originating Case No. : 2:12-cv-11683

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Deborah S. Hunt, Clerk

Cathryn Lovely
Deputy Clerk

cc: Mr. David J. Weaver

Enclosures

Mandate to issue.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0004p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

ANGELIA RUFFIN, et al.,

    *Plaintiffs-Appellants*,

*v.*

MOTORCITY CASINO, d/b/a Detroit Entertainment, L.L.C.,

    *Defendant-Appellee*.

No. 14-1444

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:12-cv-11683—Stephen J. Murphy III, District Judge.

Argued: December 5, 2014

Decided and Filed: January 7, 2015

Before: COLE, Chief Judge; GRIFFIN, Circuit Judge; CARR, District Judge.[*]

---

**COUNSEL**

**ARGUED:** Christopher P. Desmond, JOHNSON LAW, PLC, Detroit, Michigan, for Appellants. Eric J. Pelton, KIENBAUM OPPERWALL HARDY & PELTON, P.L.C., Birmingham, Michigan, for Appellee. **ON BRIEF:** Christopher P. Desmond, JOHNSON LAW, PLC, Detroit, Michigan, for Appellants. Eric J. Pelton, Thomas G. Kienbaum, Thomas J. Davis, KIENBAUM OPPERWALL HARDY & PELTON, P.L.C., Birmingham, Michigan, for Appellee.

---

[*]The Honorable James G. Carr, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

1

---

**OPINION**

---

CARR, District Judge.  Under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*, an employee's meal period is compensable if the employee spends that time predominantly for her employer's benefit.  *Hill v. United States*, 751 F.2d 810, 814 (6th Cir. 1984).  The question here is whether MotorCity Casino's security guards, who must remain on casino property during meal periods, monitor two-way radios, and respond to emergencies if called to do so, spend their meal time predominantly for their own benefit or that of the casino.  Because we agree with the district court that no reasonable jury could find that the meal periods predominantly benefitted the casino, we affirm the grant of summary judgment to MotorCity.

I.

The plaintiffs are current and former security guards at the MotorCity Casino in Detroit, Michigan.  MotorCity assigned the guards to work five, eight-hour shifts per week.  While on duty, the guards were responsible for escorting large amounts of cash, monitoring the casino floor, and listening to their two-way radios.  The casino also required guards to attend a fifteen-minute roll-call meeting before the start of every shift, but it did not pay the guards for doing so.  Both sides agree that the roll-call meetings are compensable.

Under the parties' collective bargaining agreement, a guard working an eight-hour shift was entitled to a paid, thirty-minute meal period.  The parties stipulated in the district court that guards were "free, during their breaks, to eat, drink, socialize with other MotorCity employees, use their cell phones, utilize the internet, watch the TVs installed in the cafeteria and various break rooms, read, use the company provided computers in the cafeteria, [and] play cards and other games[.]"

At the same time, MotorCity restricted how guards could spend their meal periods. Guards could not leave casino property, have food delivered to the casino, or receive visitors. The guards therefore spent meal periods in either a large cafeteria, where free food and drinks were available, or one of the smaller break rooms—all of which could be crowded and noisy.  A

smoking area was also available, and guards could walk along an outdoor path surrounding the casino.

Central to this appeal is MotorCity's requirement that the guards monitor their radios during meal periods. The guards were responsible for listening to their radios and, if they heard a dispatcher call the appropriate code, responding to an emergency in the casino (a fight, for example, or a patron experiencing a health problem). A guard who did not respond to a mid-meal emergency call was subject to discipline.

Aside from monitoring the radio, the guards performed no job duties during meal periods.

According to the parties' stipulation, "a meal period may occasionally be interrupted due to an emergency call." Security guards who lost meal time responding to an emergency were entitled to have the time made up. Guards could file a grievance if MotorCity failed to provide make-up time, but there is no evidence that a guard ever filed such a grievance.

Plaintiffs Sharise Webb and Latrina Kirby, who worked as dispatchers at the casino, testified that emergencies rarely interrupted their meal periods. Asked how often an emergency interrupted her meal periods, Webb responded, "[I]t doesn't happen very often." For her part, Kirby estimated missing fewer than ten meal periods during her eight-year tenure at the casino. Plaintiff Philip Tibbs, who had worked as a security guard for more than ten years, recalled missing only one meal period.

Although guards rarely dealt with emergencies during meal breaks, monitoring the radio exposed them to constant, work-related chatter on the radio. Kirby and Webb testified that they had to focus on this chatter, because only then would they know if an emergency required their attention. Kirby also testified that she did not block out the chatter, but paid close attention to it.

Nevertheless, Kirby and Webb agreed that they were able to eat, socialize with coworkers, and use their phones while monitoring their radios. Webb generally spent meal periods eating and talking to coworkers, though she also used her smartphone to make calls, send text messages, and surf the Internet. Kirby, too, socialized and conducted personal business on her phone, though she testified she could not make long calls while listening to the radio. Tibbs read the Bible and monitored his radio at the same time.

In 2012, plaintiffs sued MotorCity for violating the FLSA's overtime provision, 29 U.S.C. § 207(a). They alleged that MotorCity required them to work at least 41.25 hours per week—five eight-hour shifts, and a fifteen-minute roll-call meeting before each shift began—but paid them for only forty hours' work. The crux of this claim was plaintiffs' contention that their half-hour meal periods constituted working time—and were thus compensable—because guards spent that time predominantly for MotorCity's benefit.

On MotorCity's motion for summary judgment, the district court held that the undisputed evidence showed that the meal periods were non-compensable. Based on the parties' stipulation, the court determined that monitoring the radio was a de minimis activity, not a substantial job duty. The district court also noted that guards had many freedoms during meal periods, including the ability to eat, read, make phone calls, use the Internet, and watch television. And while the court accepted that the work-related radio chatter was constant, it found no evidence in the record supporting plaintiffs' claim that monitoring the radio regularly disrupted their meal periods.

Because the meal periods were non-compensable, the court ruled that MotorCity could offset the time guards spent on paid meal breaks against the time they spent attending unpaid, but compensable roll-call meetings. The district court accordingly held that, because plaintiffs worked only 38.75 hours per week, they were not entitled to relief on their overtime claim.

II.

We review de novo the district court's grant of summary judgment. *Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 580 (6th Cir. 2014). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

III.

The FLSA "obligates employers to compensate employees for hours in excess of 40 per week at a rate of 1½ times the employees' regular wages." *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2162 (2012); *see* 29 U.S.C. § 207(a)(1). Although the FLSA does not define "work," the Supreme Court has held that "work" means "physical or mental exertion

(whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944).

"Time spent predominantly for the employer's benefit during a period, although designated as a lunch period or under any other designation, nevertheless constitutes working time compensable under the [FLSA]." *F.W. Stock & Sons, Inc. v. Thompson*, 194 F.2d 493, 496–97 (6th Cir. 1952). But "[a]s long as the employee can pursue his or her mealtime adequately and comfortably, is not engaged in the performance of any substantial duties, and does not spend time predominantly for the employer's benefit, the employee is relieved of duty and is not entitled to compensation under the FLSA." *Hill*, 751 F.2d at 814.

Whether time is spent predominantly for the employer's or the employee's benefit depends on the totality of the circumstances. *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944). It is the employee's burden to prove that a meal period is compensable. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946); *Myracle v. Gen. Elec. Co.*, No. 92-6716, 1994 WL 456769, at *4 (6th Cir. Aug. 23, 1994).

A.

One relevant factor in the compensability analysis is whether the employee is "engaged in the performance of any substantial duties" during the meal period. *Hill*, 751 F.2d at 814. Although "substantial duties need not be more than waiting for something to happen, or '[r]eadiness to serve[,]'" *Myracle*, 1994 WL 456769, at *5 (quoting *Armour*, 323 U.S. at 133), "'[i]t is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved.'" *Hill*, 751 F.2d at 815 (quoting *Anderson*, 328 U.S. at 692).

Plaintiffs contend that monitoring their two-way radios, which exposed them to a steady stream of work-related radio chatter during meal periods, is a substantial job duty. Neither the case law nor the evidence in the record supports their claim.

"Numerous courts . . . have declined to find that an employer's requirement that an employee carry a radio and respond if necessary converts the meal time to work time." *Haviland*

No. 14-1444            *Ruffin, et al. v. MotorCity Casino*            Page 6

*v. Catholic Health Initiatives-Iowa Corp.*, 729 F. Supp. 2d 1038, 1061 (S.D. Iowa 2010) (collecting cases).

For example, in *Henson v. Pulaski Cnty. Sheriff's Dep't*, 6 F.3d 531, 536 (8th Cir. 1993), the court held that police officers' meal periods—during which the officers had no duties save for "monitor[ing] their radios and . . . respond[ing] in the case of an emergency"—were not compensable. Despite that restriction, the court explained, the officers still enjoyed "a full thirty minutes to use for their own purposes . . . subject only to the possibility of being recalled in an emergency." *Id.* And in *Avery v. City of Talladega*, 24 F.3d 1337, 1347 (11th Cir. 1994), the court held that police officers' meal periods were non-compensable—even though the officers had to monitor radios while on break—because the officers were nevertheless "free to spend their meal breaks in any way they wish so long as they remain in uniform, leave their radios on, and do not leave the jurisdiction."

At the district-court level, two persuasive cases hold that security guards who monitored radios during their meal periods were not performing a substantial job duty. *See Haviland*, 729 F. Supp. 2d at 1069 (hospital security guards' meal periods non-compensable where evidence showed guards performed no duties "other than carrying radios and being available to respond to calls"); *Agner v. United States*, 8 Cl. Ct. 635, 638 (Cl. Ct. 1985) (requirement that Library of Congress security guards monitor radios during meal periods did not convert meal time to working time because guards still enjoyed "duty free lunch break during which they need only eat, rest, or engage in any other appropriate activity"), *aff'd* 795 F.2d 1017 (Fed. Cir. 1986).

The gist of these cases is that monitoring a radio, and being available to respond if called, is a de minimis activity, not a substantial job duty. *Cf. Aiken v. City of Memphis*, 190 F.3d 753, 759 (6th Cir. 1999) (police officer's obligation to monitor radio during commute home did not convert commuting time to working time because "amount of work involved in monitoring a police radio during a commute is simply de minimis"). That is, monitoring a radio is generally a peripheral activity that an employee can perform while spending her meal breaks however she likes.

Although there may be a case where monitoring a radio qualifies as a substantial job duty, this is not that case. Rather, the evidence is undisputed that plaintiffs spent their meal

periods "adequately and comfortably," *Hill*, 751 F.2d at 814—by eating, reading, socializing, and conducting personal business on their phones—despite needing to monitor their radios. Plaintiffs also stipulated they were free to smoke, watch television, use casino-provided computers, and play cards during meal periods, but they introduced no evidence that monitoring the radio interfered with, or prevented them from enjoying, these activities.

The absence of any evidence that plaintiffs performed a substantial job duty during their meal breaks supports the district court's judgment that those breaks were predominantly for the guards' own benefit.

B.

A second factor to consider is whether the employer's business regularly interrupts the employee's meal period. The frequency of such interruptions is important because "[t]he question is not whether [the employees'] meals were interrupted . . . but whether the degree of interruption caused them to spend their meal periods primarily for [the employer's] benefit." *Beasley v. Hillcrest Med. Ctr.*, 78 F. App'x 67, 69 (10th Cir. 2003). It is thus possible that an employee who does not perform a substantial duty during the meal break, but who must consistently interrupt the meal to perform one task or another, nevertheless spends that time predominantly for the employer's benefit.

We have twice held that a meal period was non-compensable where there was no evidence of frequent interruptions to the meal period. *See Hill*, 751 F.2d at 815 (postal worker "did not show that he is subject to frequent or even occasional interruptions by postal patrons during his meal period"); *Myracle*, 1994 WL 456769, at *5 ("To the extent that plaintiffs are occasionally interrupted [during their meal periods], these interruptions are *de minimis* and do not render the meal period compensable.").

Conversely, we have relied on evidence that emergencies regularly interrupted an employee's meal periods to hold that those periods were compensable. *See F.W. Stock & Sons*, 194 F.2d at 496; *see also Bernard v. IBP, Inc. of Nebraska*, 154 F.3d 259, 265 (5th Cir. 1998) (meal periods were compensable where employees' lunches were "often" interrupted by "problems requiring the workers' immediate attention").

Here, plaintiffs introduced no evidence that emergency calls regularly interrupted their meal periods. Rather, they stipulated that such interruptions occurred only occasionally—and even that may be an overstatement. Although the stipulation is silent as to the frequency of the interruptions, plaintiffs' own testimony proved that they were essentially unheard of. Webb did not identify a single instance when an emergency interrupted her meal period, Tibbs recalled missing one meal period in more than ten years' employment, and Kirby missed fewer than ten meal periods over an eight-year span.

That plaintiffs enjoyed their meals without regular interruptions also shows that the meal periods predominantly benefitted the guards. *See Hill*, 751 F.2d at 815; *Myracle*, 1994 WL 456769, at *5; *see also Haviland*, 729 F. Supp. 2d at 1069 (meal periods non-compensable where employees "failed to come forth with evidence identifying the frequency, nature, and extent of interruptions to their meal periods").

C.

A final factor we consider is the employee's inability to leave the employer's property during meal breaks.

The Department of Labor, which has statutory authority to enforce the FLSA, has issued regulations "specifically address[ing] compensability of employees' mealtimes." *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 63 (2d Cir. 1997). The most pertinent of those regulations says that "[i]t is not necessary that an employee be permitted to leave the premises if he is otherwise completely freed from duties during the meal period." 29 C.F.R. § 785.19(b).

Courts have likewise concluded that "merely requiring an employee to remain on the employer's premises does not convert meal break time into compensable working time." *Haviland*, 729 F. Supp. 2d at 1062 (collecting cases); *see also Agner*, 8 Cl. Ct. at 638 ("mere fact that an employee is required to eat lunch on the employer's premises . . . does not convert this private leisure time into compensable time").

That is a sensible position, because it is not so much the employee's inability to leave the premises that indicates who predominantly benefits from the meal period, but rather whether the

employer takes advantage of the employee's presence on the premises by making her work during a nominal meal period.

Consider *Haviland*, where hospital security guards—like the guards in this appeal—had to take their meals on the employer's property and monitor two-way radios, but were otherwise completely relieved of duty. 729 F. Supp. 2d at 1061. Although the guards made generalized "assertions that they could not do what they wanted [because] they were stuck on campus[,]" *id.* at 1068, the district court found it was undisputed that the guards were nevertheless "able to enjoy their meal periods in either a break room, office, or squad room, in an environment conducive to reading, studying, or relaxing[.]" *Id.* And, there was no evidence that the hospital structured the guards' meal periods in such a way that the guards were "expected, let alone required . . . to perform any of the[ir] duties while on break." *Id.* at 1063.

Now consider *Reich*. The plaintiffs were a group of "outside craft employees" who used their employer's valuable equipment to install telephone wires. *Reich*, 121 F.3d at 62. Whenever the employees took their lunch breaks at an outdoor worksite, the employer required that they "stay at the site to secure the area and its equipment and to prevent harm to the public." *Id.* at 63. The employees also had to perform a "myriad of other responsibilities that may arise during the lunch period," like reviewing blueprints and preparing time sheets. *Reich v. S. New England Telecomms. Corp.*, 892 F. Supp. 389, 393 (D. Conn. 1995). Unsurprisingly, the Second Circuit held that these meal periods were compensable. *Reich*, 121 F.3d at 65–66.

Comparing these cases shows that some employees confined to their employer's property can spend meal periods adequately, comfortably, and predominantly for their own benefit, while others cannot. The relevant inquiry should therefore be whether the employer requires an employee to take meals on the premises as an indirect or round-about way of extracting unpaid work from the employee.

Considered this way, MotorCity's requirement that security guards take their meals on casino property does not show that the meal periods predominantly benefitted the casino. Despite being stuck at the casino, plaintiffs spent their meal periods doing exactly what one might expect an off-duty employee to be doing on a meal break: eating, socializing, reading, surfing the Internet, and conducting personal business on their smartphones.

D.

Up to this point, we have considered the factors bearing on the compensability of plaintiffs' meal periods in isolation. But after examining the totality of the circumstances, *see Armour*, 323 U.S. at 133, we agree with the district court that MotorCity was entitled to summary judgment. The evidence is undisputed that plaintiffs perform no substantial job duties during meal breaks, emergency calls rarely—if ever—interrupt the guards' meals, and the guards pursued their "mealtime adequately and comfortably." *Hill*, 751 F.2d at 814. In these circumstances, no reasonable jury could find that plaintiffs' meal periods predominantly benefitted MotorCity.

Plaintiffs contend that two Tenth Circuit cases—*Beasley* and *Lamon v. City of Shawnee*, 972 F.2d 1145 (10th Cir. 1992)—suggest that they are entitled to a jury trial on their overtime claim. That contention lacks merit.

In *Beasley*, the court held that a jury should have decided whether hospital nurses' meal periods were compensable. 78 F. App'x at 71. The record there showed that the nurses' job duties—answering phone calls, talking with doctors, observing computer monitors, and coordinating the arrival of incoming patients—regularly spilled over into their meal periods, interrupting between seventy-five and ninety-five percent of the unpaid meal time. *Id.* at 70–71. But evidence of that sort is precisely what is lacking here.

In *Lamon*, the Tenth Circuit held that the district court properly submitted to the jury the question whether police officers' meal periods were compensable. 972 F.2d at 1155–56. During their meal breaks, the officers had to monitor a radio, respond to emergency calls or personnel shortages if told to do so, answer citizens' questions, and confront crimes committed in their presence. *Id.* at 1156. Given the "number and range of restrictions placed on" the officers, *id.*, the court held that the evidence supported the jury's verdict that the meal periods were compensable.

*Lamon* does not help plaintiffs. Contrary to plaintiffs' suggestion, the case does not hold that—let alone explain how—monitoring a radio is a substantial job duty. Nor does it discuss how often, if at all, officers had to interrupt their meal periods to respond to emergencies, speak

with citizens, or confront a crime in progress.  Moreover, the officers in *Lamon* were responsible for performing more, and more substantial, job duties during meal periods than plaintiffs, who only had to monitor a radio.

Finally, we note that the Department of Labor has issued an advisory opinion suggesting that a more heavily restricted meal period than the one plaintiffs enjoyed was non-compensable. *See* Wage and Hour Division, U.S. Dep't of Labor, Letter FLSA2004-7NA (Aug. 6, 1994), available at http://goo.gl/Cb9CRJ (last visited Jan. 5, 2015).  The employees there were confined to "a small lunchroom and cannot change clothes, make phone calls, or smoke, and cannot leave the building."  *Id.*  Nevertheless, the Department concluded that "the mere fact that the employees are not allowed to leave the premises and are otherwise slightly restricted in their activities during the meal period does not make the time hours worked."  *Id.*

If those meal periods were not compensable, neither are the plaintiffs' meal periods.

IV.

For these reasons, we affirm the district court's judgment.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 14-1444

ANGELIA RUFFIN, et al.,

      Plaintiffs - Appellants,

    v.

MOTORCITY CASINO, d/b/a Detroit Entertainment, L.L.C.,

      Defendant - Appellee.

**FILED**
*Jan 07, 2015*
DEBORAH S. HUNT, Clerk

Before: COLE, Chief Judge; GRIFFIN, Circuit Judge; Carr, District Judge.

**JUDGMENT**

On Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION WHEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk